and Larry E. Craig, individually, and in his official capacity as treasurer of Craig for U.S. Senate. Mr. Herman for the appellate, Mr. Hancock for the appellate. Thank you. Are we speaking from microphones? The microphone is built-in. Built-in microphones. Excellent. Why don't you go to the corporal. Before I start, I just want to say we're very happy to be here on the 150th anniversary of the second coming of GW Law School. We also go back, well, we go back actually more than 150 years, with quite a few interesting cases in 1865, as you can imagine. We've decided that if we're really going to be a circuit court, we need to ride the circuit every once in a while. So that's what we're doing today. May it please the Court. In 2007, Senator Larry Craig employed his substantial discretion over his committee funds, paying legal fees to address an inquiry into his personal conduct by the Idaho Statesman newspaper. His media expenses to address both this inquiry and the subsequent June 2007 arrest in the Minneapolis airport were similarly permissible. Yet, his legal expenditures to withdraw his guilty plea in that matter, the cause of the ensuing political crisis, were deemed irrespective of his office and candidacy, and thus were personal use. This result cannot be squared with the statute, and it is not what Congress contemplated when it enacted the law. Senator Craig possesses significant discretion to expend his committee funds to address any type of political matter that arises. Okay, so you set it up in terms of the meaning of the statute and also FEC interpretation. Let's talk about the plain meaning of the statute. The statute defines a personal expense, one for which you cannot use campaign funds, as an expense that would exist irrespective of the candidate's election campaign or duties as a holder of federal office. How in the world is Senator Craig seeking to withdraw a guilty plea? It's not squarely within the plain meaning of the statute. It has nothing to do with him being an officeholder. Well, Your Honor, in 2006 and 2007, he employed the same attorneys he ultimately used to withdraw his guilty plea to address an inquiry by the Idaho Statesman into the exact same type of conduct that was at issue in the plea. After his arrest and his guilty plea, which he filed to try to maintain this as a personal private matter, it was then leaked to Roll Call newspaper. It was immediately the subject of two Senate ethics complaints, including one that was filed by his Republican colleagues, essentially excommunicating him from the party. At that point, it became a political crisis that was driven solely by the fact... I'm asking you to look at the plain meaning of the statute. Expense that would exist irrespective of the candidate's election campaign or duties. This is an expense that would have happened if he hadn't entered a guilty plea? I don't get it. This was based on a guilty plea that he entered and he was trying to withdraw. That's irrespective of his status and his duties. If he had not been a United States Senator, he would have filed his guilty plea. There would not have been a leak to Roll Call newspaper. He would not have had to address all of the political repercussions. That comes back to whether you're talking about status or duties. The statute speaks in terms of duties. What you're talking about is his status as Senator. It may have influenced his spending these legal fees. We can't say that it did because certainly a non-Senator could have gone the same route, but it does not resonate with me that this comes with the meaning of duties in the plain language of the statute. Well, Your Honor, under the formulation by Congress in enacting the statute, they used irrespective, which is in the absence of or without regard to. In the absence of his senatorial position. It doesn't say position. It says duties. That's exactly what I'm asking you about. You keep coming back to your position. And that's not what the statute is talking about. It says duties. Your Honor, as a result of the guilty plea, he lost his standing in the Senate. He was removed from the various committee positions that he had as the top ranking Republican on a number of committees. He lost professional stature. He also, of course, ultimately had to retire and opted not to run again for the 2008 election. All of these things were created by the fact that his guilty plea. So you're saying if the Senate Ethics Committee hadn't taken action, it would be different? Well, it's because the wheelhouse of the type of legal expense that is not recoupable, right? The DUI, the divorce, right? Yeah. But each of those can also affect the status of a senator in the eyes of his commons. So what's different here? Well, they may, Your Honor. Again, the statute calls for a case-by-case analysis. I mean, this is an extremely unique situation where there were – he was dealing with the issue about his personal conduct before this arrest. And he was permissibly using legal – expending committee funds for legal fees to deal with the Idaho statesman. The FEC doesn't maintain that his payment to the same attorney – That's why we're asking about the statute. Maybe the FEC is wrong about that. Maybe the expenses for press relating to purely personal misbehaviors are also not proper under the statute. But let's first focus only on the statute. I think that's what's bothering us here. It's clear that the expenses for the Senate Ethics Committee are not personal, right? Because only a senator has to appear before the Senate Ethics Committee. So that's not the issue. Is your position that if he was able to withdraw the guilty plea and go to trial, nothing after that, nothing after withdrawal would be permitted? Well, Your Honor – Expenses after withdrawal. Do you agree with that? Well, Your Honor, again, under this case-by-case analysis, the line that has to be drawn is what would a reasonable person expend on a disorderly conduct misdemeanor charge? And this carried with it a $575 fine. And I would offer this probably the most expensive disorderly conduct offense in history. Well, that's because he was trying to withdraw his plea. But let's just – I still would like the answer to my question. If he had decided to go to trial originally, or if he had won his withdrawal of the plea and went to trial, then what? Would those expenses have been personal or not? Well, it would depend on the case- On this specific case. Your Honor, the extent to which his expenses were increased because he was a United States senator or a candidate for Congress, those would be reimbursable with committee funds. It's clear in your view, then, that somebody who was drinking under the influence of alcohol would be able to expend money to defend themselves if they were a member of Congress or the Senate, because that often leads to your constituents deciding to vote you out, right? So is your position that anybody who is convicted, charged, or imagine he was charged with murder, chances of him succeeding as a senator if he pled guilty or was convicted would be pretty small, I would hope. So is your position that every senator who's charged with murder can spend his campaign money – let's use that as the – I know this has gotten to be a compound question, so let's leave it at that. With respect to murder, if you're charged with murder, can you use your campaign funds to defend yourself? I would say almost undoubtedly no, Your Honor. But if I may, we do have another example, not along the lines of murder, but along the lines of personal misconduct. I want to get into the – we'll get to the previous decisions by the FEC. That's what you're getting to, right? We'll get to that in just a moment. I just want to stay with the statute for a minute. And drunken driving? To the extent that your status as a senator or candidate increases your cost for defense, then under that irrespective standard, yes, Your Honor. Increases your cost, like you've got to get a really good lawyer, you mean? Well, Your Honor, if you're charged with a DUI and you're going to lose your license and all the other consequences, that is something that any defendant is going to attend to. But to the extent that 99 defendants are charged with a DUI and the DA asks for a year suspended license, and this member, the DA, says we want to put him in jail for five years, at that point, then that is available to the irrespective standard. It's possible to look at that and say, well, gee, this person is being treated differently. That's if you were targeted. There was no claim that he was targeted on his arrest here, right? Well, he was certainly targeted with the leak of his plea. Not with his arrest? No, Your Honor. Not with his arrest. But again, to be clear, these expenses were for the withdrawal of the plea. They were not to attack the charges directly. The session on the murder hypothetical that Judge Garvin gave you, isn't that crippling to your argument? How can you distinguish that setting from any other criminal setting? Well, Your Honor, in a murder setting, if you're charged with murder, generally prosecutors don't allow suspected murderers to just escape. In this case, how many other disorderly conduct pleas nationally resonated so strongly? How many were leaked to the newspaper? How many were utilized to inflict political damage for someone because of the implications of what his personal conduct were? This is not a case where he blew a DUI and it was clear that he had ten drinks or he committed murder. This is a case where he pled guilty to causing alarm because of the way that he moved his feet and his hands. And he pled guilty to a misdemeanor disorderly conduct charge carrying a $575 fine. And as a result of that, he was essentially hounded out of the Republican Party. So what's the rule you would have the FEC adopt or us adopt? How do we distinguish between various criminal charges and whether campaign funds can be used to aid the defense of a member of Congress charged with something like that? What's the rule? I mean, you've said case by case, but what's the rule we would use in each case? Well, Your Honor, I would employ the rule that was used by three FEC commissioners in the Vitter advisory opinion, where they looked at the fact that there were 15,000 people who were potentially the subject of the, were part of this. Can you get to the rule? Is that really a workable rule? You were talking about the consequences of misdemeanors. Do you regard the conduct in this case? I can well imagine the TV preacher having similar, I don't have to imagine. And lots of other professions and people with dire consequences from similar misdemeanor conduct. Is it really a workable rule to say, well, because he's a senator, he's spent more? At worst, it gets back to the status thing. It may not even work if you knew your status. Well, Your Honor, I don't think it's significantly different from what's essentially a reasonable person rule. Would a reasonable person have spent the hundreds of thousands of dollars to try to attack? So do candidates from now on need to announce in advance that if you're going to give money to me, part of this money may go in case I'm fending off a criminal charge. That's part of what it is. It's not just for television advertising. It's not just for getting out the vote. It's now for a personal defense fund. That's a staggering implication that you're suggesting. Because you're a senator, you're going to get access to campaign funds that normal citizens wouldn't have access to. I recognize that's a policy argument. That's up to the FEC to decide. It could bring us to the remedy, which is another issue you have here that we haven't allowed. Yeah, I do have some more questions on the substance of it, if that's okay. How do you know, when you say that three FEC commissioners signed on to a particular thing, that the only thing we have in the Bitter case is a draft from the general counsel to the commission, saying we have been asked to circulate the alternative draft? There is nowhere published that this was the view of three senators, is there? Well, Your Honor, in the actual advisory, the Bitter advisory opinion, which is a public opinion, they answer the various questions, and then when they deal with the question of whether his attorneys, whether he could have spent campaign funds to pay his attorney to quash the subpoena and to monitor the criminal case, the FEC stated that they could not reach agreement, that they were deadlocked 3-3. Correct, but the question is, what was the reasoning? You want us to give some kind of deference to three who voted against a public cause finding? In that case, they're reasonable. Well, that's an advisory opinion, it comes as a result of a request. No, no, no, I know, but this was not being able to give an advisory opinion. That's right, because they were unable to get the requisite four votes. What was their reasoning? We never give deference to any kind of advisory opinion, minority or majority, without reasoning. What was the reasoning? Well, the reasoning in the opinion was that there were 15,000 people who could have possibly been the subject of subpoenas. How do you know that? That's at page 7 and 8 of tab C of the draft advisory opinion. Yes, but how do we know that that is the views of the three rather than a draft opinion prepared by staff? How do we know that there just weren't three? I agree that there were obviously three who wouldn't go with an advisory opinion, but how do we know what the rationale for the three were? Well, Your Honor, I was asked earlier how do we provide a workable standard. I'm not asking you that. You're not asking me that. No, no, I'm not. But a big part of your argument here is some deference to a decision by the commission. Whether this is entitled to deference or not is another question, but it has to have a rationale. And we don't have a rationale stated by any commission. Well, Your Honor, we're not asking you to defer to that. Clearly, the court is not going to defer to a draft advisory opinion. But what we are indicating is that that was a workable line of analysis for some part of the commission, that they could distinguish between what a normal person would encounter and what a candidate would encounter. Obviously, the other three didn't think it was workable. That's correct, Your Honor. We have to decide whether. Well, and this is a matter of first impression, and this court will draw that line. Well, in a divorce case, the commission's view is that, and the federal legislature, that expenditures in divorce cases are personal, right? Yes, Your Honor. Do you agree with that? As a general matter, yes, Your Honor. Well, all expenditures? Or do we have to do a case by case? As a general matter, a divorce case is going to be personal. But to the extent that a divorce case becomes politicized or that someone's opponent uses it, then there may be a situation where. What if the person comes from a religious area that doesn't believe in divorce? And, of course, everybody in that area might fight their divorce, one side or the other. But the senator wants to fight it even more. You would measure that delta somehow? There would have to be an application of a reasonable standard for what is. . . How much a reasonable person would spend in resisting a divorce they don't want, and how much a senator would spend, and how would we calculate that? Again, Your Honor, Congress enacted a case-by-case analysis. The FEC regulations. . . I don't see anything in the statute that says case-by-case. Well, but Congress listed a number of things which were per se personal, and then everything else was left to the irrespective standard, and the FEC regulations mirror that. The regulations specifically say that legal fees are going to utilize a case-by-case standard. Counsel, let me ask you. What are we to make of the argument that Senator Craig made to the Ethics Committee when he was contesting their jurisdiction? My notes say he said he was arrested, quote, for purely personal conduct unrelated to the performance of official Senate duties, end of quote. What are we supposed to make of that in our analysis? Well, Your Honor, that statement addressed the jurisdiction of the Senate Ethics Committee. It didn't address the application of the personal use statute. Well, you agree, though, he was arrested for purely personal. You're not disputing that. Well, his conduct in the restroom certainly was purely personal. We're not maintaining that it was not. I see my time has expired. No, now we have a question. So one of the great things about this particular circuit is you have a clock, but we don't. So any judge can keep this. Our late colleague Spock would love it when you say the lights control the bar. Only God can control this. Now, with reference to the disgorgement, you're not disputing the authority of the Commission to have a disgorgement remedy only as to where the disgorge funds are going? Yes, Your Honor. Now, the order of disgorgement ran to Senator Craig, not to the committee. Is that correct? Well, yes, Your Honor. The order of disgorgement ran to Senator Craig. And disgorgement would come from Senator Craig. And you would agree that there can be a disgorgement remedy, but not that it can go to the Treasury? Well, if it goes to the Treasury, it's not disgorgement anymore. Yeah, that's what I'm coming to. There is a cap on the penalty, and the disgorgement to the Treasury is added to the penalty to the vendor that goes down the cap. Yes, Your Honor, that's exactly right. I didn't keep it much longer. Well, that was a moral requirement. So you would agree, though, that there are many, many cases where courts have ordered disgorgement not to the people from whom the money was taken, but either to the Treasury or the government or something else, right? All cited in the Fishback case. All cited in the Fishback case, which is not in an election context. It's not, but it's the word disgorgement, right? That's what we're talking about. The statute says, in this case, any orders or something like that, right? Other orders. It says other orders. The court may grant permanent or temporary injunction, restraining order, or other order, right? And disgorgement is certainly an other order, right? Disgorgement is an other order. And it is certainly, at least the historical precedent, is relatively strong for the proposition that it can go to the Treasury. It does not have to go back to the people who originally gave the money, right? Well, yes, Your Honor, but in this case, unlike in a disgorgement where there's fraud or some other criminal misconduct, and this is a case discussing a regulation, a statute, there is a clear locus for the money to return to. The FEC maintains it was improperly spent from the committee. The FEC below, their primary request was that the money be disgorged back to the committee so that it can be utilized in accordance with the statute. So you would have no quarrel if they had ordered Senator Craig to disgorge the money back to the committee and then the committee were ordered to disgorge it back to the donor? Well, Your Honor, if the money were ordered disgorged back to the committee, then it could be theoretically refunded to the donors, although there's no indication in the record that any donor has requested a refund. Well, at that point, then, what would be wrong with ordering it to be disgorged to the treasury? Well, Your Honor, I think the disgorgement would then be in the matter. It would really be a penalty at that point. At that point, that penalty would not be above the cap. No, the $197,000 would not be above the cap, but it would leave the remaining $45,000. If that were to come from the committee rather than Craig. Your argument would not be effective if the judge had ordered the senator to disgorge to the committee and the committee to disgorge to the treasury. Well, it would be effective in two ways. First of all, it would be disgorgement to the committee, and then it would be a penalty paid by the committee to the United States Treasury. The reason that I heard you giving me for saying, well, the senator couldn't be ordered to disgorge this, is that it was effectively a penalty, and a penalty is one above the cap. That's correct, Your Honor. So if he disgorged it to the committee, it would not be a penalty. It would be a federal disgorgement. That's correct, Your Honor. Then the committee could be ordered to disgorge, but since, as you say, the path is not clear to get it back to the donors, then why not, as Fishbeck would suggest, send it to the treasury? Well, the court would have been permitted to have ordered that. They did not, but it would also leave the question of the additional $45,000, which would then exceed that cap. That would be a personal penalty. That's on Craig. You're distinguishing between the senator and the committee. Yes, Your Honor. So couldn't Craig be hit for $45,000, and the committee be hit for $45,000? The statute does not indicate that there can be a double penalty. Why do you think Fishbeck isn't relevant here and all those other cases? Well, none of those cases are federal election commissions, Your Honor. All right. But why does that matter? Disgorgement is an equitable remedy. It's not particularly provided in the statute. It's just within the equitable power of the court. Yes, Your Honor. Why isn't Fishbeck a good example? Well, when you're creating a remedy, you have to look towards the intent of the statute. And in this case, the money was contributed to Senator Craig by donors, by people who wanted to support Senator Craig. Now, even if this court were to say that Senator Craig misspent the $197,000, there's no indication that the donors don't remain in support of Senator Craig or that there's no indication of a request for a refund. So for cases like Fishbeck, which are insider trading cases, it's pretty clear that the people who were insider traded against, that is, when Fishbeck traded and got a better benefit than they would have if the information had been disclosed. It's not just that case. All of those cases, it's pretty clear that those people who sold their stock on the market would have liked their money back. And there are mechanisms to give their money back. That's normally what happens in plaintiff's class actions, right? So it's not true that—I'm not seeing the distinction here. We have a group of people who we don't know whether they want their money back or not, but it seems perfectly reasonable that they would. And yet, in Fishbeck, it wasn't required to give it back to them. Your Honor, there's nothing in the record of any request for a refund. And clearly, this is a— Disgorgement is not reimbursement. Disgorgement is a separate remedy that doesn't, in Fishbeck, and not necessarily have to go to Mike Coe. It is, in a sense, a set of co-ante remedies. But it doesn't have to create precisely the ante. Why aren't the cases that the Chief Judge is referring to authority from the proposition that it can go to the jury? It does not have to go to the original donor. Because in those cases, there was some difficulty or some friction to returning the money to status quo ante. In this case, there is absolutely no friction to that. It is a simple matter of returning the money to the committee, and as the FEC requested below, allowing him to use it consistent with their view of the statute. So this is money that was donated to Senator Craig for his use. For his campaign. And if this court— It was donated to him for his campaign. It was not donated for his use. Well, it's beyond his campaign, respectfully, Your Honor. The money donated to his campaign is beyond his campaign? Well, it was for purposes— The whole reason we're here is that there is a line between your personal use and your campaign. Yes, Your Honor. That's the whole reason we're here? Yes, Your Honor. But my point is that if the funds, if this court were to find that the funds were misspent, as the FEC requested and as we agreed below, they can be returned to his committee and he can use them consistent with what this court defines as a permitted use under this statute.  Thank you. Thank you. Good morning, Your Honors. And may it please the Court, Kevin Hancock for Appellee Federal Election Commission. The district court's ruling should be affirmed. For at least two decades, the commission has consistently applied a clear and simple test to determine when an officeholder may spend campaign funds on his legal expenses. The allegations of the legal proceeding must relate to his officeholder duties. In Senator Craig's legal proceeding, he was prosecuted for disturbing the peace, an offense which he first admitted in 2007 to the Senate Ethics Committee had absolutely nothing to do with his officeholder duties. Why did he withdraw? Why did he seek to withdraw the plea? Well, so first, factually, it's not clear at all that he was actually motivated by his office to withdraw the plea. He announced at a press conference that he was going to withdraw the plea, and during that press conference also said that he was going to resign from office. And so he said he wanted to clear his name. So he was personally motivated to withdraw the plea. Let's imagine a hypothetical. Let's imagine a situation in which we knew that the only reason the officeholder would withdraw his or her plea was for the re-election campaign. There's a hypothetical. I understand. But that's the only reason that motivated that. What do we do with that set of facts? It'd be irrelevant, as the district court found, because it's not an officeholder duty. The statute requires duties to have cost and expense that can be paid for with campaign funds. And so even if the senator's expenses did not exist irrespective of his motivations, of his fear of not winning re-election, of his guilty plea, they did exist irrespective of his officeholder duties. So why do you allow expenses to oppress? Because they are caused by one being an officeholder. Why is that? I mean, if somebody's not an officeholder, they may not like publicity either about their situation. Well, that's part of the examination that the commission engages in when it looks at one of these cases. But it always allows the expenses for press, doesn't it? It's not a per se rule. So the commission does look to see if one's candidacy or one's officeholder status or duties has caused the press attention. I'm sorry. I'm failing to see the distinction. The hypothetical idea here was that you have an officeholder who is interested in maintaining and holding on to their office and being re-elected. And the sole motivation for seeking to withdraw the plea is that. Now, why doesn't that fall within the statute? Well, because the motivations are irrelevant for responding in the legal proceeding and irrelevant for responding to the heightened media attention. The issue is, did the media attention occur because the person is an officeholder? Did the media target? Now, you're doing the same thing that I was critical of your opposing counsel. You're going to status rather than duties. Because the person was an officeholder, that's not duties, that's status. I think it is, respectfully, duties, Your Honor, because if that person, if Senator Craig did not have officeholder duties, the media wouldn't have cared about his prosecution for his different duties. You think there's no line between status and duties? I thought your brief saw such a line. There is a line between status and duties. That's why you just erased it when I asked you about it. I don't think that's the case, Your Honor. I think if an officeholder did not have duties, the press would not care about whether they were arrested for disturbing the peace. And it's all about... How do you distinguish that from the status of being a senator? You're saying because he was a senator, the media was in. You're not saying about any duty appeal. Aren't you just erasing the line that I think you drew pretty well in your brief? I don't think that's right because it's broader. So, one, the senator's argument deals with his subjective motivations. With the media attention, it's targeting. Did the media target the senator? It's different. It doesn't hinge upon what the senator may have had subjectively in his mind at the time. The Kerry advisory opinion is a great example of an application of this test as the commission... Tell me why. Because the issue in that case was Senator Bob Kerry was a Vietnam veteran. There was... I remember the issue. Tell me what the distinction is that you're drawing between duties and status. The distinction is Senator Kerry was out of office at the time he incurred his press expenses. So he couldn't have been motivated by officeholder duties. But it really is a catharsis that they're between duties and status because he didn't have either duties or status at that time, right? I'm sorry? He didn't have either duties or status at that point. So that case doesn't seem to make the distinction that you make in your brief and don't make here. Well, I think it does because the heightened media attention was caused by his candidacy and by his status because it occurred when he was still a candidate. But then later on when he incurred his media expenses, when presumably one would be motivated to respond, he no longer was a candidate or officeholder. So he couldn't have been motivated by... He must have had personal motivations. Doesn't the commission allow that expense because they look to what caused the expense in the first place, not what was going on in the officeholder's mind after the fact. The commission has been very explicit about this. That's very much the issue that dealt with. Not the one that you were trying to tell me it supports the distinction. The duties and status, you seem to say in your brief, are two different things. And I don't think it's a good distinction. Today, you seem to be saying that because he was a senator, it's a matter of status he generated. Or not because he had duties. I'm lost in your position. Well, I would argue, Your Honor, I... Again, I just reiterate that I don't think the press would be interested in Senator Craig unless he had officeholder duties. In that case, then shouldn't he get reimbursed? Right? Well, no, because he's arguing that his subjective motivations are what caused him to engage in certain actions. When the commission just looks to the nature of the legal proceeding that caused his expenses, do they involve officeholder duties? That's the question. Now, to the extent there is any inconsistency between the commission's approach with media expenses and legal proceedings, there's not, but to the extent there were, it doesn't help him anyway. Because the statute is what guides the analysis. And here it's clear that his officeholder duties are not what caused his expenses. Distinguish his case from Senator Vitter's case. I know we don't have a final decision. Senator Vitter's case involved targeting. He alleged he was targeted for a legal proceeding because he was a senator. The defendant in the action that subpoenaed him basically admitted that I'm only going after Senator Vitter because he is a senator. I'm going to drag him into this case. The senator came to us and said, look, admittedly the case does not involve, it involves personal allegations, and usually that would be game over, but I've been targeted here. And the commission deadlocked on that issue. However, Senator Craig doesn't allege that he was targeted. Doesn't allege that he was targeted with arrest or for prosecution. And so Vitter is irrelevant to this case. Even had Vitter's spending been approved, it still wouldn't help Senator Craig because, again, he doesn't even allege that he's been targeted. What about his claim of being targeted for the leak? I'm sorry, Your Honor. His claim that he was targeted for the leak. For the leak. The leak of his tape, the leak of the fact that his arrest, et cetera. You know, that just goes to the media attention. He has made no claim that he was a part, was subject to a legal proceeding because he was an officeholder. That's all after the arrest. Your Honor, I think any, so the commission has essentially rejected Senator Craig's main argument 20 years ago in its interpretive guidance for its regulation. In 1995, it passed a regulation defining personal use. And in its interpretive guidance, the explanation and justification for that regulation, it explains how the test would apply to legal expenses. And it said, as Your Honor's noted, in a personal case like drunk driving, that does not get transformed into something officeholder related, merely because it has an impact on the senator's status. Now, if that were the rule, it would completely swallow the personal use ban. There is no personal offense that would not have a major impact on a sitting officeholder's status or chances for reelection. There would always be media attention in response. That cannot possibly just transform what is ordinarily a personal expense into something officeholder duty related, or else there would be no more personal use ban when it comes to legal expenses. The same is true of one's officeholder motivations. Any expense could be turned into something officeholder related with their motivations. Buying a home, that's a per se personal use under Congress's test. But one could imagine a situation where an officeholder could say, well, I only want to buy this house in Washington, D.C. because I need to be near Congress, so therefore I can use campaign funds. But that is not the test that Congress provided for. Now, the commission's approach, and what the district court did, is perfectly consistent with the case-by-case approach required by the regulation. Case-by-case approach means we don't know just from looking at the fact that something is a legal proceeding whether it's officeholder duty related or not. And then the commission's test is to look at the allegations. What's the legal proceeding about? Just because the senator disagrees with the commission's test and what the district court did in that case-by-case approach doesn't mean the district court wasn't actually applying a case-by-case approach. It was just applying a case-by-case approach the senator does not like. Your Honor, moving on to the issue of disgorgement. The district court's order of disgorgement to the Treasury was not an abuse of discretion. That is the issue here. The case law is clear that it had the discretion, once it ordered the disgorgement, to determine where it properly should go after it took it out of Senator Craig's possession. The revenue of disgorgement requires only that, that the defendant be restored to his or her status quo, that the profits of the lawbreaking be removed from the lawbreaker. This may turn out to be irrelevant, but refresh my recollection. Can the commission impose separate penalties on the committee and the senator? It can, yes. Would that have two caps or one? In other words, could the total of the two penalties exceed what would be the cap for one? Yes. So the cap for each defendant would be $197,000. That's correct. And that's based on? The statute. The FECA's penalty statute 3109A6B-1B. In the statute, what it answers the question that Judge Santel just asked you, whether it could do these penalties for each? It specifically says that a civil penalty can, the max for a civil penalty is the amount expended in violation of the statute. So here, that was the $197,000. So each defendant could have faced. The total between the two could not exceed $197,000 or could exceed $197,000? It could. The cap is for each individual defendant. Is the statute clear on that? The statute is clear on that. And the district court was correct in making that observation. When it laid out its very good reasons for sending the disgorgement, not back to essentially Senator Craig's possession. He is now the only employee of the Craig Committee. The Craig Committee is essentially just his other pocket. He's the treasurer. The Craig Committee would seem to have no purpose, no campaign to run. So the district court was correct to say, this is maybe not the best situation for this money. I have the discretion to send it to the treasury and that's what I'm going to do. District court also observed that it could have simply just penalized the Craig Committee in the $197,000 amount anyway. There's no First Amendment issue with the district court's order of disgorgement to the treasury. Any injury to the donor's rights to the Craig Committee was caused by Senator Craig's offense. The district court certainly has that fault for that, simply because it ordered a remedy that it's perfectly entitled to order. Also, the First Amendment rights of Craig and the Craig Committee have also not been harmed. If it were the case that having a penalty violated their First Amendment rights, because that money could not be spent going forward, every civil penalty would be a violation of the First Amendment. I have another question. You know, we are the D.C. Circuit, and it's a shame to go through an argument without mentioning Chevron. But I didn't find reference to Chevron in your briefs. What's the level of deference we're supposed to give to your advisory opinions? Well, this court determined in the National Rifle Association v. FEC case that deference is, the FEC's advisory opinions are entitled to deference. I think the critical reason why- What level of deference? The commission gets, well, I'm not sure the exact level of deference, Your Honor, but the commission's reasonable interpretation of the statute is entitled to deference. And the reason why it hasn't come up is because Senator Craig doesn't challenge the regulation. The regulation is very clear about how it applies. The senator could have brought up Chevron challenge if he felt that interpretation was inconsistent with the statute, and that doesn't exist in this case. And so therefore- As the advisory committee's interpretation, the advisory opinion's interpretation of the statute is what we're talking about, not the regulation. Right. So- There's, I mean, the senator urges this court to defer to those advisory opinions, and we agree. Okay, thank you. All right. Thank you, Your Honor. Is there a question? Is that time-wise? We'll give you a couple more minutes for reply. Thank you for your indulgence, Your Honor. I'd really just like to make one point about the disgorgement issue. The FEC has now reiterated that the Craig Committee is defunct and it serves no purpose. And I really think that's a stunning statement by the FEC. There are literally dozens of campaign committees that are still extant by former members. And, in fact, the Kerry advisory opinion is an exact example of the utilization of one of those campaign committees by a retired member. And so to somehow say that if the money were to go back to the Craig Committee, that- But isn't it? Since disgorgement is an equitable remedy, including who it goes back to, and given the district court's view that the person who was the treasurer has abused his authority in that respect, why is it an abuse of discretion for the district court to say, well, I'm not giving it back to the control of the person who committed abuse in the first place? Well, Your Honor, the district court applied a bright-line standard here, which essentially said because Craig's conduct in Minneapolis was personal, that I'm not looking at any of the other circumstances. And as we've discussed, it's a much broader standard than that. Even if this court were to find that the money were spent improperly, that doesn't establish Senator Craig as an intentional lawbreaker. The district court thought that he had advanced knowledge that he shouldn't be doing it. We're not even discussing that at this point. The district court thought that he had advanced knowledge he shouldn't be doing that. He got the warning from the Ethics Committee, et cetera. Given that, and he did it anyway, and in her view, it was clear that he couldn't. Given that, and I want you to assume those are all true purposes of this, why was it an abuse of discretion to decide not to give it back to the person who had acted improperly under those circumstances? Because, Your Honor, the district court misperceived the function of a campaign committee, which there are numerous ways you can utilize that money. It's not the function. It would not be an empty gesture. Okay, let me ask you a question raised somewhat elliptically by your opponent. This has to do with the specific list of prohibited uses in the statute. So it says, the statute B-2 says, It shall be converted to personal use, if it was for the expense of a personal use, that exists irrespective of the candidate's election campaign or individual duties as a holder of federal office, including, and then lists a number of includings. So these are examples. Now, is there any reason why these examples shouldn't inform our view generally, as to what it meant by the more general statement, irrespective of the candidates? Normally, we would do that, right? Yes, Your Honor. So, the first two, give me some pause over your argument. So, the first one is a home mortgage, right? So, imagine that, and the second one is a clothing purchase. Maybe the easiest is to talk about the clothing purchase. The person says, look, I can't, I don't have enough money to spend on cool clothes. And I've got a really cool constituency. And they want me to wear, you know, the latest. You know, I've got only wide lapels, and they're all young, they're from Brooklyn. So, I need to buy new clothes. Or I won't be able to continue as a congressman, I guess. So why is, and that's his motive. That's the person's clear motive, and everybody agrees. Normally, the guy dresses like a schlub. But now he's been elected, and he's got to dress up. No dispute about that. And that's the only reason he's buying the clothes. What do you think? I think it's a much more subjective analysis than the concrete repercussions of Senator Craig's plea, and the leak of that. This is a very hard line. So, imagine the first one, home mortgage. Imagine the person is way behind and is about to be foreclosed on his mortgage. And, you know, people don't like the idea that he can't pay his bills, or his rent, or his utility payments, or whatever it is. And he says, look, I can't get by as a member of the House unless I use my money to pay for that. And this is what my donors would have wanted. They want me to continue in office. How do I draw the line against that one? It's really hard. It's hard, you're right. So, if we don't want to draw really hard lines, then maybe we don't make this down here. I was just going to give one little further refinement. Be my guest. Suppose that he's a member of the House, not the Senate, and the line was redrawn. He goes to buy a house in the new district. He's 100 yards outside his district. Would that be reimbursable expense? Your Honor, I may be wrong on this, but I don't think you actually have to live in the district to represent that district as a member of Congress. You have to live there to get elected, and I don't want to do that. I would not like to manage the campaign if somebody is not going to live in the district. They don't live in the district. Well, Your Honor, this is a matter of first impression, and this is a line that this Court is now going to have to confront. I can't manage really. Thank you both sides. It was a very good and interesting argument. We'll take the matter under submission.
judges: Garland, Griffith, Sentelle